IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL HENRY SHAHAN, )
)
Petitioner, )
)
v. ) Civil Action No. 3:18CV200–HEH
)
J. RAY ORMOND, )
)
Respondent. )

## MEMORANDUM OPINION
(Granting Motion for Summary Judgment)

Michael Henry Shahan, a federal inmate proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1). Shahan's claims stem from his conviction within the Bureau of Prisons ("BOP") for the institutional infraction of possession of stolen property. Specifically, Shahan raises the following claims for relief:[1]

Claim One: The Discipline Hearing Officer ("DHO") disallowed twenty-seven days of his good conduct time ("GCT") and failed to provide him with a copy of the DHO Report in violation of 28 C.F.R. § 541.8(h) and BOP Program Statement 5270.09.[2] (§ 2241 Pet. 6; ECF No. 9, at 5 n.1.)

Claim Two: He was denied due process when "[he] was forced to serve out the sanctions as imposed by [the] DHO without the opportunity to appeal the sanctions or the loss of GCT." (§ 2241 Pet. 7.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to Shahan's submissions. The Court corrects the spelling, capitalization, and punctuation in the quotations from Shahan's submissions.

[2] In Shahan's Response, he explains that "[he] inadvertently misidentified BOP [Program Statement] 5270.09 in his original § 2241 Petition as '5470.09.'" (ECF No. 9, at 5 n.1.)

Respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment ("Motion for Summary Judgment," ECF No. 4),[3] asserting, *inter alia*, that Shahan's claims lack merit.[4] Shahan filed a Response. (ECF No. 9). For the reasons set forth below, Respondent's Motion for Summary Judgment (ECF No. 4) will be granted. Shahan's § 2241 Petition will be denied because Shahan's claims are without merit.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the Court of the basis for the motion, and to identify the parts of the

---

[3] Respondent styled his motion as a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. (ECF No. 4.) Because the Court relies upon the exhibits submitted by the parties, the Court will determine whether summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure, and declines to consider Respondent's motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). As such, the Court will refer to Respondent's motion as a Motion for Summary Judgment.

[4] Respondent also argues that Shahan's § 2241 Petition should be dismissed because he "failed to exhaust his administrative remedies since receiving the DHO [R]eport." (Mem. Supp. Mot. Summ. J. 7, ECF No. 5.) It is Respondent's burden to establish that Shahan did not exhaust all available administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (concluding that "failure to exhaust [administrative remedies] is an affirmative defense"). Based on a review of the record, it is clear that Shahan did not exhaust his administrative remedies *after* he received the DHO Report on May 17, 2018. (Harris Decl. ¶ 15, ECF No. 5–1.) However, in Shahan's Response, he explains that prior to filing the instant § 2241 Petition, he attempted to exhaust his administrative remedies regarding the fact that "he had not received the DHO Report," and "it is not the DHO Report itself that he is attempting to challenge through this § 2241 Petition." (ECF No. 9, at 5.) Respondent has not adequately addressed whether Shahan exhausted, or could have exhausted, his administrative remedies *before* he received the DHO Report. Because Shahan's instant § 2241 Petition presents claims regarding his inability to appeal the DHO's decision before he received the DHO Report, and Respondent does not explain whether Shahan exhausted his administrative remedies with respect to these claims, the Court will address the merits of Shahan's claims.

record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

3

In support of his Motion for Summary Judgment, Respondent submits: (1) the Declaration of Sylvia G. Harris, Legal Assistant at the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg"), ("Harris Decl.," ECF No. 5-1); (2) an Incident Report (*id.* Attach. 1, ECF No. 5-2); (3) a Notice of Discipline Hearing Before the DHO form (*id.* Attach. 2, ECF No. 5-3); (4) an Inmate Rights at Discipline Hearing form (*id.* Attach. 3, ECF No. 5-4); (5) a DHO Report (*id.* Attach. 4, ECF No. 5-5); and (6) records of Shahan's administrative remedy requests (*id.* Attach. 5, ECF No. 5-6).

Shahan signed his § 2241 Petition under penalty of perjury. (§ 2241 Pet. 9.) Additionally, Shahan swore to the contents of his Response under penalty of perjury. (ECF No. 9, at 13.) Shahan also submitted exhibits with his § 2241 Petition (ECF No. 1-1, at 1-6), and with his Response (ECF Nos. 9-2 to 9-7).

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Shahan.

## II. SUMMARY OF PERTINENT ALLEGATIONS

Shahan is currently serving a 120-month sentence imposed by the United States District Court for the Northern District of Texas on December 17, 2015. (Mem. Supp. Mot. Summ. J. ¶ 1, ECF No. 5 (citing *United States v. Shahan*, No. 3:15-CR-00202-N-1 (N.D. Tex. Dec. 17, 2015), ECF No. 35).) The events giving rise to the instant § 2241 Petition occurred at FCC Petersburg, and Shahan was incarcerated at FCC Petersburg when he initiated this action. (§ 2241 Pet. 1; *see* Mem. Supp. Mot. Summ. J. ¶ 2.)

4

On August 23, 2017, staff at FCC Petersburg were searching inmates "during the 6pm compound move." (Harris Decl. Attach. 1, ECF No. 5–2, at 2.) The officer who conducted the search reported:

> . . . I was shaking down inmates by the recreation gate. I called inmate Michael Shahan . . . over to check his bag. While checking inmate Shahan's bag I discovered two stolen recreation softball gloves. On one of the softball gloves, inmate Shahan had his register number written on it. I asked inmate Shahan where did he get the gloves from and he said he received the gloves from another inmate. I informed inmate Shahan that the gloves w[]ere stolen. I knew the softball gloves belong to the recreation department because the tag was ripped off and it left two holes where we put the leather tag on the gloves.

(*Id.*) The Incident Report charging Shahan with Possession of Stolen Property, in violation of BOP Prohibited Act 226, was filed later that same day. (*Id.*)

Shahan received a copy of the Incident Report on August 24, 2017. (*Id.*) At that time, Shahan was advised of his institutional rights. (*Id.* at 3.) Shahan indicated that he "understood his rights" and that he "did not wish to request a staff representative." (*Id.*) Shahan requested that another inmate be interviewed regarding the incident. (*Id.*) On August 24, 2017, staff at FCC Petersburg completed an investigation into the incident. (*Id.*) During the investigation, "when questioned in regards to the [I]ncident [R]eport [Shahan] stated, 'I got those gloves from another [i]nmate who transferred out. I didn't know they were recreation[']s gloves[.]'" (*Id.*) As Shahan had requested, another inmate was interviewed, and the inmate reported: "Shahan didn't know [t]hose gloves were recreation[']s gloves. Those gloves were thrown in the hot trash when recreation bought new gloves. Another inmate [r]emoved those gloves from the hot trash. They were later given to Shahan when that inmate transferred out of Petersburg." (*Id.* (internal quotation

5

marks omitted).) Upon completion of the investigation, the investigator recommended that the report be forwarded to the Unit Discipline Committee ("UDC"). (*Id.*)

On August 25, 2017, Shahan appeared before the UDC. (Harris Decl. ¶ 6 (citation omitted).) During the UDC hearing, Shahan stated: "I did not know [the gloves] were stolen due to be[ing] a new arrival to the institution, and hav[ing] received them [from] other inmates[.] They were discarded to my acknowledg[]ment." (*Id.* Attach. 1, ECF No. 5–2, at 2 (internal quotation marks omitted).) The UDC referred the matter to the DHO for further hearing "[d]ue to the severity of the incident." (Harris Decl. ¶ 6 (citation omitted).) Later that same day, Shahan received written notice that the matter was being referred to the DHO for further hearing. (*Id.* Attach. 2, ECF No. 5–3, at 2.) Shahan also received written notice of his rights at the hearing, and he acknowledged being advised of his rights. (*Id.* Attach. 3, ECF No. 5–4, at 2.) Shahan indicated that he did not wish to have a staff representative at the hearing, but indicated that he wished to call two other inmates as witnesses. (*Id.* Attach. 2, ECF No. 5–3, at 2.)

The DHO held a hearing on August 30, 2017. (Harris Decl. ¶ 8 (citation omitted).) The DHO confirmed that Shahan "had received a copy of the [I]ncident [R]eport, did not wish for the assistance of a [s]taff [r]epresentative and had no documentary evidence to present." (*Id.* Attach. 4, ECF No. 5–5, at 2.) During the hearing, Shahan "denied the charge," but stated: "I admit to having the gloves. I just did not know they were stolen. I got them from a guy that left Petersburg." (*Id.*) As Shahan had requested, two inmates appeared as witnesses and presented testimony on Shahan's behalf. (*Id.*) The Recreation Supervisor also testified and "[a]dvised [that] gloves with

6

two holes from tags being ripped off are gloves stolen from FCC Petersburg's recreation department." (*Id.*) "In addition to the [I]ncident [R]eport and investigation, the DHO considered the photograph sheet of the items described in the [I]ncident [R]eport." (Harris Decl. ¶ 10 (citation omitted).)

The DHO found that "[t]he act was committed as charged," and sanctioned Shahan by disallowing twenty-seven days of GCT and imposing six months' loss of commissary use and six months' loss of phone use. (*Id.* Attach. 4, ECF No. 5–5, at 3.) As justification for the charge, conviction, and sentence, the DHO provided the following explanation:

> I find you committed the prohibited acts of Possession of Stolen Property, Code 226, while incarcerated at FCC Petersburg. The specific evidence relied upon to support this assignment is the account of the incident provided in a written statement (Incident [R]eport) of L. Humphrey, Recreation Supervisor which states the following:
>
> On Wednesday 8–23–2017, during the 6pm compound move, I was shaking down inmates by the recreation gate. I called inmate Michael Shahan #49598–177 over to check his bag. While checking inmate Shahan's bag I discovered two stolen recreation softball gloves. On one of the softball gloves, inmate Shahan had his register number written on it. I asked inmate Shahan where did he get the gloves from and he said he received the gloves from another inmate. I informed inmate Shahan that the gloves w[]ere stolen. I knew the softball gloves belong to the recreation department because the tag was ripped off and it left two holes where we put the leather tag on the gloves.
>
> At the DHO hearing, you denied the charges. You admitted that you had possession of the gloves but just did not know they were stolen. You stated that you got them from someone that left FCC Petersburg. The DHO also considered and relied upon the testimony provided by Mr. Humphrey during the DHO hearing that the gloves with the two holes for the tags being ripped off are gloves stolen from the FCC Recreation Department. Your assertion that you got the gloves from someone that left FCC Petersburg was also considered, but was insufficient to excuse you from the offense. You are

> responsible for maintaining your area and person free of contraband. Without question, you were in possession of property (gloves) belonging to the institution that had been appropriated without authorization. Your witnesses['] testimony was consider[ed], but did not help your case.
>
> Therefore, because the evidence presented showed that you did in fact have an item of stolen property in your possession, the DHO concluded that the charge against you in this case was appropriate and warranted.

(*Id.*) Roughly eight months after the DHO hearing, the DHO Report was finally completed and signed on May 2, 2018, and the report was delivered to Shahan on May 17, 2018. (*Id.*)

Upon receipt of the DHO Report, Shahan was advised that "he could appeal the DHO's findings through the BOP's Administrative Remedy Procedures within twenty calendar days of receiving the DHO [R]eport." (Harris Decl. ¶ 15 (citation omitted).) "Shahan had until June 6, 2018, to file an administrative remedy request." (*Id.*) As of July 9, 2018, "the BOP's electronic administrative remedy system [did] not show that such a request has been filed." (*Id.*; *see id.* at 6.)

### III. ANALYSIS

#### A.  Claim One – Prison Regulations

In Claim One, Shahan contends that the DHO violated 28 C.F.R. § 541.8(h) and BOP Program Statement 5270.09 by disallowing twenty-seven days of Shahan's GCT and failing to provide him with a copy of the DHO Report. (§ 2241 Pet. 6; ECF No. 9, at 5 n.1.) As an initial matter, contrary to Shahan's assertion regarding his failure to receive the DHO Report, after he initiated this action, Shahan received the DHO Report. Specifically, the Court received Shahan's § 2241 Petition on March 28, 2018, and the

8

DHO Report was delivered to Shahan on May 17, 2018. (*See* § 2241 Pet. 1; Harris Decl. Attach. 4, ECF No. 5–5, at 3.) Therefore, with respect to Shahan's claim that he did not receive the DHO Report, such a claim is moot because after filing this action, Shahan received the DHO Report. *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983) ("If intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, [a] federal court[] [is] powerless to decide the questions presented.").

Furthermore, although not specifically articulated in Shahan's instant § 2241 Petition, even if Shahan intended to claim that staff violated 28 C.F.R. § 541.8(h) and BOP Program Statement 5270.09 because he was improperly disallowed twenty-seven days of GCT and he received the DHO Report in an untimely manner, such claims are contrary to the plain reading of these provisions. 28 C.F.R. § 541.8(h) provides:

> Written Report. You will receive a written copy of the DHO's decision following the hearing. The DHO is not required to prepare a verbatim record of the hearing. The DHO's written report will document the following:
>
> (1) Whether you were advised of your rights during the DHO process;
> (2) The evidence relied on by the DHO;
> (3) The DHO's decision;
> (4) The sanction imposed by the DHO; and
> (5) The reason(s) for the sanction(s) imposed.

28 C.F.R. § 541.8(h). BOP Program Statement 5270.09 states that "[t]he DHO prepares a record of the proceedings. The evidence, decision, and reasons for actions taken must be specific, unless this would jeopardize security. The DHO gives the inmate a written copy

9

of the decisions and disposition, ordinarily within 15 work days of the decision." BOP Program Statement 5270.09, at 34.[5]

Here, the DHO Report complied with the requirements set forth in 28 C.F.R. § 541.8(h) because the DHO Report indicated that Shahan was advised of his rights during the disciplinary process, described the evidence relied on by the DHO, and set forth the DHO's decision, the sanctions imposed by the DHO, and the reasons for the sanctions. (Harris Decl. Attach. 4, ECF No. 5–5, at 3); *see* 28 C.F.R. § 541.8(h). Further, with respect to the timeliness of Shahan's receipt of the DHO Report, 28 C.F.R. § 541.8(h) does not set forth any time requirements for the delivery of the DHO's report, and BOP Program Statement 5270.09 is only advisory, providing that "ordinarily" the inmate is given a copy of the DHO's report within fifteen days. *See* 28 C.F.R. § 541.8(h); BOP Program Statement 5270.09, at 34; *cf. Mendoza v. Tamez*, 451 F. App'x 715, 717 (10th Cir. 2011) (explaining that a regulation stating that the BOP should "ordinarily" provide written disciplinary charges to inmates within a day was advisory); *Staples v. Chester*, 370 F. App'x 925, 929 (10th Cir. 2010) (alteration and emphasis in original) (explaining that a regulation stating that "[t]he DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision" did not "require that the DHO must issue a copy within ten days (only that it *ordinarily* must do so)").

---

[5] BOP Program Statement 5270.09 is available at https://www.bop.gov/policy/progstat/5270_009.pdf.

To the extent that Shahan claims that staff violated BOP Program Statement 5270.09 by failing to provide him with a copy of the DHO Report within the advisory fifteen-day period, the BOP's failure to abide by internal directives of this ilk does not give rise to a claim for habeas relief. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (citations omitted) (explaining that prison officials "are given broad discretion in the administration of [a prisoner's] confinement," and there is no due process violation "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon [the prisoner] and is not otherwise violative of the Constitution"); *see also Mendoza*, 451 F. App'x at 717–18 ("Prison regulations . . . create liberty interests only when they protect inmates from 'atypical or significant hardship . . . in relation to the ordinary incidents of prison life.' Late notice of a disciplinary charge does not represent such a hardship." (second alteration in original) (internal citation omitted)); *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law."). Because Shahan received the DHO Report, and Shahan's claims regarding staff's violation of the applicable prison regulations lack merit, Claim One will be dismissed.

B.  Claim Two – Due Process

In Claim Two, Shahan contends that he was denied due process when "[he] was forced to serve out the sanctions as imposed by [the] DHO without the opportunity to appeal the sanctions or the loss of GCT." (§ 2241 Pet. 7.) With respect to the specific

11

sanctions imposed on Shahan, the DHO disallowed twenty-seven days of GCT and imposed six months' loss of commissary use and six months' loss of phone use. (Harris Decl. Attach. 4, ECF No. 5-5, at 3.)

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself or from state or federal laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005).

It is well established that inmates, such as Shahan, have a protected liberty interest in vested GCT. *See Puranda v. Hill*, No. 3:10CV733-HEH, 2012 WL 2311844, at *3 (E.D. Va. June 18, 2012) (citing *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 653 n.9 (4th Cir. 2007)); *see also Wolff v. McDonnell*, 418 U.S. 539, 560-61 (1974). However, Shahan does not have a protected liberty interest in his loss of phone use or loss of commissary use, and such claims are not cognizable under § 2241. *See Gaston*, 946 F.2d at 343 ("[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ."); *see also Wright v. Shartle*, 699 F. App'x 733, 733 (9th Cir. 2017) (citation omitted) (explaining that claims regarding the loss of phone privileges are "not cognizable under section 2241 because

12

they do not concern the manner, location, or conditions of [an inmate's] sentence's execution"); *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (finding that an inmate's "loss of commissary privileges . . . doe[es] not implicate due process concerns"). Therefore, the only sanction in which Shahan has a protected liberty interest is his loss of twenty-seven days of GCT.

As to the revocation of GCT, the Constitution guarantees only the following minimal process prior to revoking vested GCT:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.

*Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) (citing *Wolff*, 418 U.S. at 563–71). Furthermore, "the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke [GCT]." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added). The Supreme Court emphasized that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (citations omitted).

To the extent that Shahan alleges that he was denied due process prior to the revocation of his GCT, he received all process that was due. *See Coor*, 2008 WL 8289490, at *2 (citing *Wolff*, 418 U.S. at 563–71). Specifically, the undisputed evidence

13

reflects that Shahan received an impartial hearing, during which he had the opportunity to present documentary evidence and witness testimony, and he received written notice of the charge against him prior to the hearing. (*See* Harris Decl. ¶¶ 7–10 (citations omitted).) Staff also provided Shahan with an opportunity to receive aid from a staff representative; however, Shahan declined such assistance. (*Id.* ¶¶ 7–8 (citations omitted).) Additionally, Shahan requested that two inmates appear as witnesses on his behalf during the hearing, and both witnesses testified at the hearing. (*Id.*) With respect to the DHO's findings, overwhelming evidence clearly supported the DHO's decision to find Shahan guilty of possession of stolen property and to revoke his GCT because, *inter alia*, Shahan admitted to possessing the softball gloves and there was ample evidence that the gloves were from FCC Petersburg's recreation department. (*See* Harris Decl. ¶ 11; *id.* Attach. 4, ECF No. 5–5, at 2–3.) Further, the DHO's written report explained the DHO's decision, including the evidence relied upon and the reasons for the disciplinary action. (*Id.* Attach. 4, ECF No. 5–5, at 2–3.) Therefore, Shahan received all process that was due prior to the revocation of his GCT.

Shahan alleges that *after* the hearing, he was denied due process because he was "forced to serve out the sanctions as imposed by [the] DHO without the opportunity to appeal the sanctions or the loss of GCT." (§ 2241 Pet. 7.) As an initial matter, with respect to administrative appeals, inmates do "not enjoy a procedural due process right to an appeal." *Coor*, 2008 WL 8289490, at *2 (citations omitted); *see Chambers v. Wilson*, No. 1:15CV646 (AJT/TCB), 2016 WL 775779, at *4 (E.D. Va. Feb. 24, 2016) (citing *Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996)). Moreover, the only

14

sanction in which Shahan has a protected liberty interest is his loss of GCT. *See Puranda*, 2012 WL 2311844, at *3 (citation omitted); *see also Gaston*, 946 F.2d at 343. As to Shahan's loss of GCT and his ability to appeal the DHO's decision, after initiating this action in March of 2018, Shahan received the DHO Report on May 17, 2018. (*See* § 2241 Pet. 1; *see also* Harris Decl. Attach. 4, ECF No. 5–5, at 3.) The DHO Report advised Shahan that he had the "right to appeal this action within 20 calendar days under the Administrative Remedy Procedure." (Harris Decl. Attach. 4, ECF No. 5–5, at 3.) Shahan chose not to file an appeal. (*See* Harris Decl. ¶ 15.) Shahan's choice not to pursue an appeal after he received the DHO Report does not establish a due process violation because Shahan's lack of an appeal was due to his own inaction, rather than any action taken by the BOP. *See Beverati*, 120 F.3d at 502 (emphasis added) (citations omitted) (explaining that "to prevail on either a procedural or substantive due process claim, [i]nmates must first demonstrate that they were deprived of 'life, liberty, or property' *by governmental action*").

Furthermore, generously construing Shahan's § 2241 Petition as raising a general due process claim regarding his delayed receipt of the DHO Report, such a claim also fails. "It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) (citation omitted). In the context of an inmate's delayed receipt of the DHO's report, courts have held that inmates do not suffer any prejudice when they receive the DHO's report months after the hearing, and that such a multi-month delay does not constitute a due process violation. *See, e.g., Griffin v. Ebbert*, 640

F. App'x 181, 184 (3d Cir. 2016) (concluding that there was no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under *Wolff*"); *Staples*, 370 F. App'x at 929–30 ("Assuming without deciding that a copy of the report was required [to be included with the administrative appeal], [the Tenth Circuit did] not conclude that the approximate eight-month delay in the DHO's tender of the copy to [the inmate] prejudiced his ability to bring an administrative appeal or rendered such an appeal futile."); *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) ("[E]ven if [the inmate] did not receive the DHO's written report within 10 days ... the delay had no prejudicial effect on [the inmate's] administrative appeal and thus does not provide a basis for habeas relief.").

In Shahan's Response, he vaguely suggests that he suffered prejudice because "the sanctions [had] already been served in their entirety" when he received the DHO Report. (ECF No. 9, at 7.) However, Shahan does not have a protected liberty interest in his loss of phone use or loss of commissary use, and any revocation of Shahan's GCT impacts his future release date. *See Gaston*, 946 F.2d at 343 (finding that the denial of privileges is "contemplated by [a prisoner's] original sentence to prison," and does not implicate a protected liberty interest); *Moss v. Clark*, 886 F.2d 686, 688 (4th Cir. 1989) (explaining that the BOP "applies [GCT] to the prisoner's maximum sentence which moves the

16

mandatory release date forward"). Shahan's projected release date is in 2024.[6] Even if Shahan had successfully challenged his loss of GCT in an appeal, the eight-month and eighteen-day delay in his receipt of the DHO Report would not have prevented him from receiving the benefit of a successful appeal. Therefore, due to the length of time remaining before Shahan's projected release date, and because upon his receipt of the DHO Report, Shahan could have appealed the revocation of his GCT (the only sanction in which he has a protected liberty interest), Shahan fails to demonstrate that he suffered any prejudice from his delayed receipt of the DHO Report. *See Staples*, 370 F. App'x at 930 (explaining that an inmate's delayed receipt of the DHO's report "although unfortunate, did not cause any prejudice to [the inmate] in light of the length of time remaining before his projected release date").

In summary, with respect to Claim Two, a review of the record reveals that Shahan received all process that was due before the revocation of his GCT, he had the opportunity to appeal the DHO's decision and chose not to do so, and he has failed to demonstrate that he suffered any prejudice from his delayed receipt of the DHO Report. Accordingly, Claim Two is without merit and will be dismissed.

## IV. CONCLUSION

The Motion for Summary Judgment (ECF No. 4) will be granted. Shahan's Motion to Strike (ECF No. 7), requesting that Respondent's motion, supporting

---

[6] Shahan's specific projected release date is March 24, 2024. *See* https://www.bop.gov/inmateloc/ (select "Find By Name;" type "Michael" for "First;" and "Shahan" for Last;" select "Search" button; and then locate the listing with Register Number: "49598-177."

17

memorandum, and the notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), be stricken, will be denied. Shahan's claims will be dismissed, and the § 2241 Petition (ECF No. 1) will be denied.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: Dec 19, 2018
Richmond, Virginia